People v Gibson (2025 NY Slip Op 04200)

People v Gibson

2025 NY Slip Op 04200

Decided on July 17, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 17, 2025

110930 CR-23-1380
[*1]The People of the State of New York, Respondent,
v
Antoine Gibson, Appellant.

Calendar Date:June 5, 2025

Before:Clark, J.P., Pritzker, Lynch, Ceresia and Fisher, JJ.

Rosenberg Law Firm, Brooklyn (Jonathan Rosenberg of counsel), for appellant.
F. Paul Battisti, District Attorney, Binghamton (Gerald F. Mollen of counsel), for respondent.

Clark, J.P.
Appeals (1) from a judgment of the County Court of Broome County (Kevin Dooley, J.), rendered January 17, 2019, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree, and (2) by permission, from an order of said court (Joseph Cawley, J.), entered June 30, 2023, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In July 2016, defendant and a group of his family and friends gathered outside a house on Tracy Street in the Village of Endicott, Broome County, and engaged in a heated verbal exchange with the residents of said household. This incident escalated to an all-out brawl until an Endicott Police vehicle was spotted nearby, at which point defendant's group scattered. The Tracy Street group then gathered on the street in front of defendant's house, which was located close by on Arthur Avenue. Soon after their arrival, a gunshot rang out, and the crowd dispersed. A few weeks later, a warrant was issued for defendant's arrest. Thereafter, he was charged by indictment with criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]). Following a jury trial, defendant was found guilty as charged, and County Court (Dooley, J.) sentenced him, as a second violent felony offender, to a prison term of 10 years, to be followed by five years of postrelease supervision.
In 2022, defendant moved pursuant to CPL 440.10 to vacate his conviction, arguing that the People had committed Brady and Rosario violations, and that trial counsel had provided him with ineffective assistance. The People opposed such relief, and County Court (Cawley, J.) denied defendant's motion, without a hearing. Defendant appeals the judgment of conviction and, by permission, the denial of his CPL 440.10 motion.
On direct appeal, defendant contends that the verdict is not supported by legally sufficient evidence and that it is contrary to the weight of the evidence because the People failed to proffer any physical evidence that established his possession of a firearm or that any such firearm was operable. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt. In turn, when conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Jenkins, 215 AD3d 1118, 1119 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 997 [2023]; see People v Luna[*2], 228 AD3d 1061, 1062 [3d Dept 2024], lv denied 42 NY3d 971 [2024]; People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024]). As relevant herein, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" (Penal Law § 265.03 [3]).[FN1] "A 'loaded firearm' is defined as 'any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm' " (People v Watts, 215 AD3d 1170, 1171 [3d Dept 2023] [internal brackets omitted], quoting Penal Law § 265.00 [15]).
Here, video footage from a neighbor's security camera showed defendant's group gather outside the Tracy Street house. Following a heated verbal altercation, a person in defendant's group punched someone from the Tracy Street group, and things escalated to an all-out brawl until police were seen nearby, causing defendant's group to scatter. The video further shows that, as his group left the scene, defendant handed something off to an individual later identified as his nephew. The eyewitnesses all agreed that the Tracy Street group went to defendant's home on Arthur Avenue to confront defendant and his group. All but one of the People's six civilian witnesses reported that, soon after arriving, they heard a gunshot; four of those witnesses denied seeing a handgun. The other two witnesses testified that they saw defendant, who was on his porch, pull out a gun and shoot it. Additionally, law enforcement officers testified that they found a spent 9 millimeter shell casing on the stairs to defendant's porch. Viewing this evidence in the light most favorable to the People, we are satisfied that the verdict is supported by legally sufficient evidence. Although no gun was found, the testimony of the several witnesses who heard a gunshot, the two witnesses who saw defendant possess and fire a handgun and the spent shell casing found on the porch stairs provided the jury with a valid line of reasoning and permissible inferences from which to find that defendant committed the offense of criminal possession of a weapon in the second degree beyond a reasonable doubt (see Penal Law § 265.03 [3]; People v Everett, 231 AD3d 1296, 1300-1301 [3d Dept 2024], lv denied 42 NY3d 1052 [2024]; People v Gillespie, 205 AD3d 1212, 1213-1214 [3d Dept 2022], lv denied 39 NY3d 1072 [2023]; People v Miles, 119 AD3d 1077, 1078 [3d Dept 2014], lv denied 24 NY3d 1003 [2014]; compare People v Melhado, 53 NY2d 984, 985 [1981]).
As to our weight of the evidence analysis, viewing the evidence in a neutral light, a different verdict would not have been unreasonable. As defendant notes, the two eyewitnesses who testified that they saw him fire a handgun provided differing descriptions of the incident. One witness testified that she saw defendant lift a silver handgun into the air and shoot it. The other witness described the handgun as black; although she denied that [*3]defendant shot the gun into the air or in the direction of the Tracy Street group, she also admitted that she ran for cover and did not see in which direction defendant fired. Additionally, defendant's nephew testified that defendant handed him a BB gun, not a firearm, as they were leaving Tracy Street. Such testimony contradicted a written statement made by the nephew two weeks after the incident, wherein he asserted that defendant had handed him a "little black" gun. The conflicting testimony of these witnesses presented issues of credibility for the jury to resolve and, deferring to their credibility determinations, we find that the verdict convicting defendant of criminal possession of a weapon in the second degree is supported by the weight of the evidence (see People v Gilmore, 200 AD3d 1184, 1189 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; People v Miles, 119 AD3d at 1078-1079; People v Burden, 108 AD3d 859, 860 [3d Dept 2013], lv denied 22 NY3d 1197 [2014]).[FN2]
Turning to defendant's appeal from the denial of his CPL 440.10 motion, we agree with County Court that defendant failed to show that the People committed a Brady and/or Rosario violation when they failed to turn over the transcript from a 2017 grand jury proceeding. The record reflects that those grand jury minutes were "destroyed when a computer crashed at the transcriber[']s place of business," and that the People's further efforts to obtain them were unsuccessful. As a result of the destruction of those minutes, the indictment handed down by that grand jury was dismissed. The People then presented the case to a new grand jury in 2018, resulting in the indictment underlying defendant's conviction herein. As the record reflects that the 2017 grand jury minutes were never in the People's possession or control,[FN3] County Court properly found that no Brady/Rosario violation occurred (see People v Fishman, 72 NY2d 884, 885-886 [1988]; People v Seecoomar, 174 AD3d 1154, 1158 [3d Dept 2019], lv denied 34 NY3d 1019 [2019]; People v Pagan, 103 AD3d 978, 979 [3d Dept 2013], lv denied 21 NY3d 1018 [2013]).[FN4]
Additionally, defendant contends that he was denied effective assistance of counsel. "Defendant's mixed claims of ineffective assistance of counsel are grounded upon matters appearing both on the record and outside the record and, therefore, they are assessed together, in totality, to determine whether he was deprived of meaningful representation" (People v Kendricks, 226 AD3d 1150, 1157 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 41 NY3d 1003 [2024]; accord People v Hooker, 230 AD3d 1465, 1468 [3d Dept 2024]). To prevail on such a claim, a defendant must establish "the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Contompasis, 236 AD3d 138, 152 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 43 NY3d 1007 [2025]; see People v Wilcox, 231 AD3d 1350, 1351 [3d Dept 2024]).[*4]
Defendant's claim that counsel was ineffective for failing to request a jury charge for a justification defense is without merit. In the proper circumstances, a justification defense may be available to render lawful a defendant's "use of physical force in defense of a person" (Penal Law § 35.15; see e.g. People v Dale, 115 AD3d 1002, 1005 [3d Dept 2014]). However, "there are no circumstances when justification can be a defense" to the offense of criminal possession of a weapon in the second degree where, as here, that charge is brought under Penal Law § 265.03 (3), as that subsection "does not involve the use of physical force" (People v Pons, 68 NY2d 264, 267 [1986] [internal citation omitted]; accord People v Graham, 215 AD3d 998, 999 [3d Dept 2023], lv denied 40 NY3d 928 [2023]; compare Penal Law § 265.03 [3], with Penal Law § 265.03 [1]). Therefore, trial counsel's failure to request a justification instruction that had little to no chance of success does not constitute ineffective assistance (see People v Franklin, 216 AD3d 1304, 1313 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Chappell, 198 AD3d 1018, 1020-1021 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]).
Defendant also asserts that counsel was ineffective for failing to challenge prospective jurors and for failing to call defendant's brother to testify at trial. Notably, defendant "fail[ed] to include an affirmation from [trial] counsel, or an explanation for the failure to do so, [which] has been held to warrant the summary denial of a defendant's postconviction motion" (People v Wright, 27 NY3d 516, 522 [2016]; accord People v Hooker, 230 AD3d at 1468). Defendant's challenge regarding prospective jurors rests on certain jurors' disclosed connections to law enforcement officers or on information that they or their family members had been the victim of a crime. The jury selection process, however, "involves a quintessentially tactical decision, and defendant failed to show the absence of a strategic reason" for counsel's choice to keep those jurors (People v Drumgold, 206 AD3d 1044, 1048-1049 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1150 [2022]). Defendant's failure in this respect is particularly significant where, as here, the prospective jurors expressed an ability to be fair and impartial, and the record does not reveal a bias or any information which rendered a particular juror unqualified (see People v Dorvil, 234 AD3d 1106, 1118 [3d Dept 2025]; People v Drumgold, 206 AD3d at 1049; compare People v Wlasiuk, 90 AD3d 1405, 1412 [3d Dept 2011]).
Further, defendant also failed to show the absence of a strategic reason for trial counsel's allegedly deficient decision in not calling defendant's brother to testify at trial. Through his affidavit, defendant's brother attested that defendant was inside the house with him when he heard the gunshot, and that he shared that information with trial counsel. According to the brother, trial [*5]counsel retorted that only the nephew's testimony would be helpful to defendant. Although defendant failed to provide an affirmation from trial counsel, or to explain his failure for doing so, the brother's own affidavit provides a plausible explanation about the litigation strategy pursued by trial counsel. "Defendant's disagreement in hindsight with that strategy does not establish that he received less than meaningful representation" (People v Porter, 184 AD3d 1014, 1019-1020 [3d Dept 2020] [internal quotation marks, brackets and citation omitted], lv denied 35 NY3d 1069 [2020]; see People v Marryshow, 235 AD3d 1172, 1173-1174 [3d Dept 2025]; People v Njoku, 218 AD3d 1047, 1052 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]). Assessing trial counsel's representation in its totality, the record reveals that he made appropriate pretrial motions and that, at trial, he vigorously cross-examined the People's witnesses and pursued a cohesive defense theory by attempting to cast doubt on the existence of a firearm (see People v Malloy, 228 AD3d 1068, 1072 [3d Dept 2024], lv denied 42 NY3d 971 [2024]; People v Colter, 206 AD3d 1371, 1376 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]). We also reject defendant's alternative argument that County Court abused its discretion in denying his 440.10 motion without a hearing, as there are no questions of fact which would require a hearing (see People v Dorvil, 234 AD3d at 1118; People v Hardie, 211 AD3d 1418, 1420 [3d Dept 2022], lv denied 39 NY3d 1111 [2023]).
To the extent not expressly addressed herein, we have reviewed defendant's remaining contentions and find them to lack merit.
Pritzker, Lynch, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: The home and business exception set forth in Penal Law § 265.03 (3) "is inapplicable where, as here, a defendant has a prior criminal conviction" (People v Taylor, 207 AD3d 806, 809 [3d Dept 2022], lv denied 39 NY3d 942 [2022]; see People v Jones, 22 NY3d 53, 57-59 [2013]).

Footnote 2: Defendant's claims of error regarding County Court's jury charge are unpreserved, as defendant failed to object despite having an opportunity to do so (see People v Lewis, 222 AD3d 1036, 1038 [3d Dept 2023]; People v Jones, 215 AD3d 1123, 1133 [3d Dept 2023], lv denied 40 NY3d 935 [2023]).
Footnote 3: "To establish a Brady violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Fuentes, 12 NY3d 259, 263 [2009] [citation omitted]; see People v Slivienski, 204 AD3d 1228, 1239 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]).

Footnote 4: Defendant also argues, for the first time on appeal, that the People committed a Brady and/or Rosario violation by failing to disclose that another individual at the scene possessed a shotgun. However, as he failed to raise this contention in his motion papers below, this issue is unpreserved (see People v Fort, 146 AD3d 1017, 1019 [3d Dept 2017], lv denied 29 NY3d 1031 [2017]; People v Shoga, 89 AD3d 1225, 1231 [3d Dept 2011], lv denied 18 NY3d 886 [2012]). In any case, such argument is belied by the record, as the People disclosed information about that individual through police reports and video footage from a security camera on Arthur Avenue that shows said individual running toward defendant's home with the shotgun. Defense counsel made extensive use of such detail throughout the trial, starting with his opening statement (see People v Gilmore, 177 AD3d 1029, 1030 [3d Dept 2019], lv denied 35 NY3d 970 [2020]; People v Lewis, 13 AD3d 810, 811 [3d Dept 2004]).